**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| AGNIK, LLC<br>A Maryland Limited Liability Company<br>8840 Stanford Boulevard, Suite 3120<br>Columbia, Maryland 21045<br><br>Plaintiff<br><br>v.<br><br>LOUIS L. ELLIS<br>10 Wolcott Street<br>Springfield, Massachusetts 01104<br><br>and<br><br>ELLIS AND ELLIS CONSULTING GROUP LLC<br>317 West Ave #113197<br>SMB 2913<br>Stamford, Connecticut 06911<br>A Connecticut Limited Liability Company<br><br>SERVE ON:<br><br>LEGALCORP SOLUTIONS, LLC<br>30 Old Kings Highway South, 1st Floor<br>Suite 302<br>Darien, Connecticut 06820<br>Resident Agent<br><br>Defendants | * * * * * * * * * * * * * * * * | Case No. ______________<br><br>**JURY TRIAL DEMANDED** |

* * * * * * * * * * * * *

**<u>COMPLAINT</u>**

Plaintiff Agnik, LLC ("Agnik") brings this civil action against Defendants Louis L. Ellis and Ellis and Ellis Consulting Group, LLC and, by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF SUIT

1. This is a civil action under the Lanham Act (15 U.S.C. §§ 1114(1) and 1125(a)(1)) for trademark infringement, false advertising and unfair competition.

## THE PARTIES

2. Plaintiff Agnik, LLC ("Agnik") is a limited liability company organized under the laws of the State of Maryland, with a principal place of business at 8840 Stanford Blvd, Suite 3120, Columbia, Maryland 21045. Agnik is an established leader in the telematics (the integrated use of telecommunications and informatics to send, receive, and store information about remote objects like vehicles) and connected vehicle hardware domain. For over two decades, Agnik has invested multi-million-dollar capital in engineering, market optimization, and brand equity to build the protected Vyncs® brand, distributing via its proprietary portal (vyncs.com) and core retail digital channels, including Amazon, Walmart, and eBay.

3. Agnik has owned and used the Registered Trademark Vyncs® (Registration No. 5286324) since September 12, 2017. A true copy of the Registration is attached as **Exhibit A** and made a part hereof. Agnik is a direct competitor of the enterprise that the Defendants control and operate under the name Moto Watchdog.

4. Defendant Louis L. Ellis ("Ellis" or "Mr. Ellis") is an individual who resides at 10 Wolcott Street, Springfield Massachusetts 01104. He controls and operates an enterprise known as Moto Watchdog that is a direct competitor of Plaintiff Agnik. He conducts business and has customers in this judicial district and has been using, and thus infringing on, Agnik's Vyncs® Registered Trademark without any right whatsoever, harming Plaintiff as a result.

5. Defendant Ellis and Ellis Consulting Group, LLC is a Connecticut limited liability company. It lists itself on the Amazon.com website as the seller of the Moto Watchdog products and services advertised and sold there. It controls and operates an enterprise known as Moto Watchdog that is a direct competitor of Plaintiff Agnik. It conducts business and has customers in this judicial district and has been using, and thus infringing on, Agnik's Vyncs® Registered Trademark without any right whatsoever, harming Plaintiff as a result.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

7. This Court has personal jurisdiction over Defendants because they have purposefully violated Agnik's trademark rights in this District. Jurisdiction over their persons also may be exercised because they transacted business in Maryland, contracted to supply goods and/or services in Maryland, and caused tortious injury in Maryland and regularly do or solicit business in Maryland and derive substantial revenue from goods or services used in Maryland.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendants transact business in this District using the name Moto Watchdog and a substantial part of the events giving rise to Agnik's claims occurred in this District.

## THE FACTS

9. Defendants entered the marketplace recently as a new enterprise trading as "Moto Watchdog."

10. To aggressively capture market share without incurring legitimate customer acquisition costs, Defendants engineered a multi-page web architecture hosted on the Moto

Watchdog domain, explicitly targeted at keywords involving "Vyncs®." Rather than engaging in permissible, objective comparative advertising, Defendants compiled extensive, deliberate fabrications.

11. When Plaintiff became aware of this misconduct it investigated it and uncovered the following highly damaging categories of misconduct:

a. **Fabricated Product Imagery:** Defendants have published numerous highly rendered, "fake" product graphics alleged to represent the Vyncs® Link hardware. These graphics bear zero physical or industrial resemblance to the authentic Vyncs device, specifically designed to degrade consumer perceptions of Vyncs' actual industrial form-factor and engineering quality. An evidentiary portfolio titled "Fabricated Vyncs Product Imagery and Misrepresented Technical Feature Pages" is attached as **Exhibit 1** and made a part hereof.

b. **False Pricing Matrices:** Defendants have continuously published false pricing matrices. For example, in their primary comparison matrix, Defendants falsely asserted that Vyncs imposes a mandatory monthly fee structure scaling to thousands of dollars over time ($3,600 over 5 years for 5 devices), whereas the authentic Vyncs® pricing mechanism explicitly operates on a transparent upfront hardware purchase combined with an annual flat service renewal, featuring a base renewal tier of approximately $79.99/year—entirely devoid of monthly billing models. An evidentiary portfolio titled "Moto Watchdog vs Vyncs Falsified Price Comparison Matrix" is attached as **Exhibit 2** and made a part hereof.

c. **Material Functional Deceptions:** Defendants have published systematic misstatements claiming that Vyncs lacks fundamental telematics alerts, driver behavior

tracking metrics, and historical route records, or that it demands professional configuration. In reality, as publicly detailed across vyncs.com/features-vyncs-gps-tracking.aspx, the authentic Vyncs system natively incorporates real-time 4G updates, comprehensive OBD-II engine diagnostic fault codes, driver safety scorecards, automated geofencing boundaries, and plug-and-play architecture. See **Exhibit 1**, which is made a part hereof.

d. **Predatory Organic Interception (SEO Injection):** Defendants have purposefully deployed title tags, metadata structures, and URL configurations engineered to capture consumers actively searching for authentic Vyncs support structures (e.g., "Vyncs Login Guide for Fast and Secure Access" and "Vyncs Customer Service Explained"). Once a consumer was intercepted, the interface utilized strategic call-to-action buttons to immediately reroute the user to the Moto Watchdog commercial portal and Amazon product checkout paths. An evidentiary portfolio titled “Predatory SEO [Search Engine Optimization] Interception Assets (Customer Service & Login Misdirection)” is attached as **Exhibit 3** and made a part hereof.

12. On May 28, 2026, Plaintiffs, by counsel, delivered a cease-and-desist demand to Defendant Louis Ellis, trading as Moto Watchdog, specifying numerous infringing uses of Plaintiff’s Vyncs® registered mark. The demand, a true and correct copy of which is attached as **Exhibit 4**, concluded:

> Mr. Ellis, you and your enterprise have no right or authority to be infringing on my client’s registered mark. The content of those pages (and all others that reference Vyncs) is wrongful and illegal. Each and every one (whether listed above or otherwise) should be taken down immediately to prevent further harm to Agnik and its Vyncs mark. ***As to the past and continuing harm that you and your enterprise have inflicted on Agnik, Agnik reserves all rights to seek compensation for it.***

> On behalf of my client, I write to demand that you: a) immediately cease and desist from infringing on my client's registered mark by immediately taking down the offending above-listed pages and all others that reference the mark and b) send me a reply this email immediately (and in any event by no later than noon, Eastern Daylight Savings Time, on Friday, May 29, 2026) with a confirmation that you accept it and agree to abide by this cease and desist demand, effective immediately. (Emphasis added.)

13. Having been caught red-handed, Defendants took down the offending content almost immediately. Within less than an hour after receiving the demand, Mr. Ellis responded in writing that he would take down the offending pages and did so.

14. This lawsuit is Plaintiff's vehicle to recover compensation for the damages it has sustained (and will continue to sustain) as a result of Defendants' wrongful conduct since May 15, 2024.

15. Section 1114(1)(a) of the Lanham Act, codified within Title 15 of the United States Code, provides that "(1) Any person who shall, without consent of the registrant –(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant for the remedies hereinafter provided."

## INJURY TO AGNIK

16. Defendants' unauthorized use of Agnik's registered trademark is likely to cause confusion, mistake, and deception as to Agnik and its services.

17. Defendants have knowingly, willfully, and in reckless disregard leveraged and exploited the substantial goodwill and reputation associated with Agnik's intellectual property

rights. Through its willful misappropriation of those rights, Defendants obtained a substantial unfair competitive advantage by foregoing and freeriding on Agnik's significant investments in time and expense that contributed to its highly sought after and commercially successful products.

18. Plaintiff Agnik has suffered (and will continue to suffer) substantial damage because of Defendants' misconduct in siphoning traffic from Vyncs. Indeed, Plaintiff has determined that Defendants diverted approximately 29% of Agnik's prospective organic customer acquisitions directly to their Moto Watchdog Amazon storefront.

19. Plaintiff's losses and damages include the following:

a. **Lost Profit from Amazon Sales:** Plaintiff has determined that the average number of Vyncs units sold on Amazon dropped by 29% because of Defendants' wrongful conduct alleged herein. The estimated revenue lost in the first year is $239,040. Vyncs users pay a renewal fee in between $79.99 and $119.99 per year depending upon the variant of the Vyncs product they have. Using an average of $100 renewal fee per year, the lost revenue in five subsequent years is $996,000. Therefore, the total lost revenue from Amazon sales is $ 1,235,040. After subtracting the cost of goods, the total lost profit from Amazon sales comes to $1,112,532.

b. **Lost Profit from Vyncs Website and Other Online Platforms:** Plaintiff has calculated the total lost profit from Vyncs website and other online platforms as a result of Defendants' wrongful conduct alleged herein to be $ 222,506.40.

c. **Profit Collected in 12 months by Defendant due to 11 month-long unlawful campaign.** Plaintiff estimates the profit collected by Defendants, trading as Moto Watchdog, because of their wrongful conduct as alleged herein was at least $116,532 in 12 months due to his unlawful 11 month-long campaign against Vyncs.

d. **Profit to be Collected by Defendant Beyond the 11 months.** Defendants' Moto Watchdog product will continue to benefit from the enhanced search rank achieved during the unlawful 11 month-long campaign against Vyncs. Plaintiff estimates that amount to be at least $233,064.

e. **Corrective Advertising Costs** The damage to the Vyncs brand caused by Defendants will need to be corrected by an extensive marketing campaign. This will require a full-time SEO person for at least one year and also the hiring marketing services for reputation management and influencer marketing. Plaintiff estimates the cost to be $350,000.

f. **Legal Fees** Agnik's legal fees in pursuing this matter will be substantial.

g. **Treble Damages** As alleged above, Defendants' actions were intentional -- conducted with greed and malice. Agnik will be entitled to treble damages as a result.

h. **Total Demand for Compensation** Plaintiff's total demand for compensation, as detailed above, is in excess of Five Million ($5,000,000) Dollars.

20. Defendants' unlawful acts have also damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

21. Defendants have acted knowingly, willfully, in reckless disregard of Agnik's rights, and in bad faith.

## COUNT I

**Trademark Infringement Under**
**Section 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a))**

22. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-21 above.

23. Defendants' conduct constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

24. Plaintiff is the owner of the Vyncs® trademark.

25. Plaintiff has registered the Vyncs® trademark with the United States Patent and Trademark Office.

26. The Vyncs® trademark is and has been at all times pertinent to this case a valid trademark in full force and effect.

27. Defendants willfully and knowingly used the Vyncs® trademark without authorization in: a) systematic integration of and into false pricing models, b) fabricated technical data, c) unauthentic product imagery within a commercial comparison matrix and d) predatory SEO interception of assets.

28. The statements Defendants published on the Moto Watchdog about Vyncs were fabricated, materially influenced consumer purchasing profiles, and occurred in interstate commercial frameworks.

29. Defendants' unauthorized, extensive usage of the Vyncs® mark within targeted, artificial page titles (such as customized Customer Service Guides and Login Portals) infringed Plaintiff's Vyncs® mark and was explicitly calculated to generate initial interest confusion. This illegal methodology deceived consumers into believing they were interacting with authentic Vyncs-affiliated resources, only to trap them in a predatory sales funnel redirecting their traffic to Moto

Watchdog's Amazon checkout pages. It also materially damaged the value of the Vyncs® mark and caused significant damage to Plaintiff's business relationships.

30. As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

31. Plaintiff Agnik is entitled to recover its damages caused by Defendants' infringement of the Vyncs® mark and disgorgement of Defendants' profits from their willfully infringing sales and unjust enrichment.

32. Plaintiff Agnik is entitled to recover (1) Defendants' total profits garnered via this illicit traffic diversion and (2) enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Vyncs® mark.

**COUNT II**

**False Advertising Under**
**Section 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a))**

33. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-32 above.

34. Defendants' advertisements described above were false and misleading.

35. The advertisements deceived, or had the capacity to deceive, consumers,

36. The deception had a material effect on purchasing decisions.

37. The misrepresented products and services affected interstate commerce.

38. Plaintiff has been severely injured as a result of the false advertising.

**COUNT III**

**Unfair Competition Under**
**Section 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a))**

39. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-38 above.

40. Defendants' willful and knowing use of the Vyncs® trademark without authorization in: a) systematic integration of and into false pricing models, b) fabricated technical data, c) unauthentic product imagery within a commercial comparison matrix and d) predatory SEO interception of assets, constitutes unfair competition under the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A).

41. Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously and in bad faith engaged in unfair competition.

**REQUEST FOR RELIEF**

WHEREFORE, Agnik LLC respectfully requests that this Court enter judgment in its favor and award it at least the following relief:

A. An Order that Defendants' conduct, as detailed above, infringes Plaintiff's Registered Trademark Vyncs® (Registration No. 528632),, and constitutes trademark infringement and unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a).

B. A permanent injunction enjoining Defendants and all others acting in concert or participation with him from further acts of infringement of Plaintiff's Registered Trademark.

C. An Order requiring Defendants to account for and pay to Plaintiff any and all profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117, and other applicable laws,

and increasing such profits, including trebling them, in accordance with 15 U.S.C. §1117 and other applicable laws.

D. An Order requiring Defendants to pay Plaintiff damages caused by the foregoing acts in accordance with 15 U.S.C. § 1117 and trebling such damages in accordance with 15 U.S.C. § 1117.

E. An Order requiring Defendants to pay Plaintiff punitive damages in an amount to be determined due to the foregoing willful acts.

F. An Order declaring this to be an exceptional case and awarding Plaintiff its attorneys' fees and costs in this action pursuant to 15 U.S.C. § 1117, and other applicable laws.

G. An Order awarding pre- and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct set forth above.

H. Awarding Plaintiff any other additional relief as the Court deems just and proper.

Respectfully submitted,

November 2, 2026

*/S/ James K. Archibald* .

James K. Archibald (D. Md Trial Bar No. 00097)
Wright, Constable & Skeen, LLP
1 Olympic Place, Suite 800
Towson, Maryland 21204
(410) 659 - 1321
(410) 659 – 1350 (f)
Jarchibald@wcslaw.com
*Attorneys for Agnik, LLC*

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Agnik LLC respectfully demands a trial by jury on all issues properly triable by a jury in this action.

/S/ *James K. Archibald* .
James K. Archibald (D. Md Trial Bar No. 00097)
Wright, Constable & Skeen, LLP
1 Olympic Place, Suite 800
Towson, Maryland 21204
(410) 659 - 1321
(410) 659 – 1350 (f)
Jarchibald@wcslaw.com
*Attorneys for Agnik, LLC*